UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO S.M., <br><br> Petitioner, <br><br> v. <br><br> KRISTI NOEM, Secretary of the United States Department of Homeland Security; CHRISTOPHER CHESTNUT, Warden of the California City Detention Center; SERGIO ALBARRAN, Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; PAMELA BONDI, Attorney General of the United States, <br><br> Respondents. | No. 1:25-cv-01973-KES-HBK (HC) <br><br> ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS <br><br> Doc. 1 |

This habeas action concerns the re-detention of petitioner Sergio S.M., a noticizen who was detained and released in 2022 then recently re-detained.[1] For the reasons explained below, the petition for writ of habeas corpus is granted.

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

**I.      Background**[2]

Petitioner is a 20-year-old asylum-seeker who asserts that he fled Guatemala because he was subjected to child labor since he was ten years old and suffered severe physical abuse from his mother. Doc. 1 at ¶ 46. He entered the United States as an unaccompanied minor on August 3, 2022. Doc. 1 at ¶ 3. That same day, immigration authorities apprehended and detained him. Doc. 1-1, Ex. A. Immigration authorities served petitioner with a notice to appear for removal proceedings in immigration court. Doc. 1-1, Ex. C. Immigration authorities then designated petitioner as an unaccompanied minor and transferred him to U.S. Department of Health and Human Services, Office of Refugee Resettlement ("ORR") custody. Doc. 1 at ¶¶ 44–45. On September 10, 2022, ORR released petitioner to the custody of his father, who lives in California. *Id.*; Doc. 1-1, Ex. B.

The statute that governs the detention of unaccompanied minors encountered at the border, the Trafficking Victims Protection and Reauthorization Act ("TVPRA"), provides that, in making custody determinations, ORR should consider "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). ORR's release of petitioner reflects a determination that he was not a flight risk or danger to the community. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017) ("[Immigration officials] may release the minor to a "sponsor" . . . so long as the minor is not dangerous . . . . Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." (citing 8 U.S.C. § 1232(c)(2)(A)), *aff'd* 905 F.3d 1137 (9th Cir. 2018).

Following his release, petitioner established a life in Sacramento with his father. Doc. 1 at ¶¶ 46–50. Petitioner enrolled in high school and made the honor roll. *Id.* ¶ 46. Petitioner's removal proceedings were administratively closed by no later than June 2023 so that petitioner

///

---

[2] The facts set out in this section come from petitioner's verified petition and other evidence in the record. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987)).

could seek Special Immigrant Juvenile Status ("SIJS") and deferred action. *Id.* ¶ 47.[3]  In June 2024, a state court determined that it was not in petitioner's best interest to return to Guatemala. *Id.* ¶ 6.  United States Citizenship and Immigration Services ("USCIS") granted Special Immigrant Juvenile Status ("SIJS") to petitioner as a result of the state court's finding.  Doc. 1-1, Ex. D.  A grant of SIJS provides a noncitizen a pathway to obtain lawful permanent residence. *See* 8 U.S.C. § 1255(h).  USCIS also granted petitioner deferred action for a period of four years, from April 2024 to April 2028, while he waited to adjust his status to that of a lawful permanent resident. *Id.*; *see* 8 C.F.R. § 274a.12(c)(14); *see also* 8 C.F.R. § 236.21(c)(1) (defining deferred action as "a form of enforcement discretion not to pursue the removal of certain aliens for a limited period in the interest of ordering enforcement priorities in light of limitations on available resources, taking into account humanitarian considerations and administrative convenience"). Petitioner was also granted employment authorization.  Doc. 1-1, Ex. E.

On September 2, 2025, the government moved to reopen petitioner's administratively closed removal proceedings, but the immigration court denied that motion.  Doc. 1-1, Ex. F. Petitioner's removal proceedings remain closed.  Doc. 1-1, Ex. G.  Notwithstanding the immigration court's denial of the government's motion to reopen petitioner's removal proceedings, ICE agents re-detained petitioner at his home on December 15, 2025.[4]  Doc. 1 at ¶ 51.  Petitioner is now detained at California City Detention Center.  *Id.* ¶ 52.

**II.    Procedural History**

On December 22, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 3, arguing that his detention violated the Due Process Clause, the Fourth Amendment, and the Immigration and Nationality Act.  The Court

---

[3] Petitioner indicates that his removal proceedings were closed in June 2023.  The Executive Office for Immigration Review ("EOIR") Automated Case Information Portal reflects that petitioner's removal proceedings were closed on May 5, 2023, and that they remain closed.  *See* https://acis.eoir.justice.gov/en/caseInformation (last checked on December 30, 2025).

[4] Petitioner received a citation in Placer County for disorderly conduct in violation of California Penal Code § 647(f), but he has not been charged with or convicted of that offense.  Doc. 1 at ¶ 8 n.2.  Respondents do not assert that this citation was the basis for the government's re-detention of petitioner.  *See* Doc. 9.

issued a briefing schedule and informed the parties that it intended to rule directly on the petition. Doc. 4.  Respondents filed an opposition on December 30, 2025.  Doc. 9.

### III. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### IV. Discussion

Petitioner argues that, because civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community, *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023), the Due Process Clause bars the government from re-detaining him without first providing a hearing where it must prove he is a flight risk or danger.  Doc. 1 at ¶¶ 62–77.[5]  Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

---

[5] Petitioner also appears to assert a Fourth Amendment claim.  *See* Doc. 1 at ¶¶ 78–83.  But that claim is not briefed in the petition, and it is not necessary to address it as petitioner is entitled to relief based on his due process claim.

4

### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Immigration officials' release of petitioner pursuant to 8 U.S.C. § 1232(c)(2)(A) was similar. Among other things, it allowed him to live with his father in California, to attend high school, and to obtain SIJS, deferred action, and work authorization. The Court finds that petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process

Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

### 2. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been released for over three years prior to his recent detention, and during that time, lived with his father in the community and pursued his education. His detention denies him that freedom.

Turning to the second *Mathews* factor, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal conviction. Petitioner was also granted deferred action until at least April 2028 and his removal proceedings

6

are administratively closed. As there have been no procedural safeguards to determine if petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before petitioner was detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has held that Due Process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782.

Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-deprivation* hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9. Numerous district courts have reached a similar conclusion. *See, e.g.*, *id.*; *Garcia*, 2025 WL 1927596, at *5; *Pinchi*, 2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 787 F. Supp. 3d at 1093–95; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

7

### V.     Conclusion and Order

Accordingly, the petition for writ of habeas corpus, Doc. 1, is GRANTED. Respondents are ORDERED to release petitioner immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

The Clerk of Court is directed to close this case and enter judgment for petitioner.

IT IS SO ORDERED.

Dated:  December 30, 2025

UNITED STATES DISTRICT JUDGE

8